## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EDUARDO A. SAENZ, on behalf of himself )
And all others similarly situated, )

)

Plaintiff, )

) Case No. 1:18-cv-04718-TCB

v. )

)

OLD DOMINION FREIGHT LINE, INC., )

)

Defendant. )

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CONDITIONAL CERTIFICATION

Defendant Old Dominion Freight Line, Inc. ("Old Dominion") hereby files its

opposition to Plaintiff's Amended Motion for Conditional Certification (Dkt. 13).

## INTRODUCTION

Plaintiff is far out over his skis. He asks this Court to conditionally certify a

nationwide collective action under the Fair Labor Standards Act ("FLSA") that

could comprise a class ranging from over six hundred fifty employees to well over

three thousand employees in varied job positions whose entitlement to overtime

premiums—if Plaintiff's claims were taken as true—has been largely dependent on

the actions of individual supervisors and managers at each of the two hundred thirty-

five locations where they worked. He does so on the basis of three paltry

declarations—all from former employees of a single location—that do nothing to

establish that Plaintiff is similarly situated to those he seeks to represent.[1] This Court has denied conditional certification under similar circumstances. *See, e.g.*, *Linscheid v. Natus Medical, Inc.*, No. 3:12-cv-67-TCB, Dkt. 23 (N.D. Ga. Nov. 15, 2012); *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289 (N.D. Ga. 2012) (Evans, J.). When it has granted conditional certification, the classes it has conditionally certified have been far more narrowly drawn. Only when presented with more expansive and informative evidence have broad collective actions been conditionally certified in this District.

This Court should deny Plaintiff's Motion because the small amount of evidence he has put forth to support his Motion is similar to the showings made by plaintiffs whose conditional certification motions this Court has denied. This is so, primarily, for two, powerful reasons: (1) Plaintiff's paltry evidence cannot bind together as similarly situated a nationwide class of many hundreds or thousands of employees (depending on the interpretation of Plaintiff's proposed class) whose

---

[1] Plaintiff proffers a declaration from himself and one other former employee whom he claims would be a member of his class; i.e., from a mere three-tenths of a percent, at most, of the individuals whom he seeks to represent. Since he filed his case on October 11, 2018, only three putative class members, in addition to the Named Plaintiff, have opted in (or six-tenths of a percent, at most). For reasons discussed later in this brief, the curious declaration that he submitted long after filing his Motion, from a disgruntled former employee who did not work in the position(s) Plaintiff seeks to represent, does nothing to bolster his insufficient showing.

titles and duties differ; and (2) it does not sufficiently demonstrate an interest of others who wish to join the overly expansive class Plaintiff seeks. Even if Plaintiff had submitted evidence to support the vast class he seeks to represent, which he has not done, his Motion would still be due to be denied because the exemption that Plaintiff's claims place at issue, the FLSA's Motor Carrier Act exemption, would require analysis of its applicability to individual employees, and Plaintiff fails to show that granting his Motion would promote judicial economy, especially given that this Court may not have personal jurisdiction over many of those whom Plaintiff wants to represent. Accordingly, this Court should deny Plaintiff's Motion.

## **BACKGROUND AND FACTS**

### 1.   **Old Dominion and its Various, Distinctive Service Centers**

Old Dominion is a motor carrier that offers regional, inter-regional, and national shipping and transportation services. (Ex. A, Declaration of Dave Bates ("Bates Decl.") at ¶ 3.) Old Dominion operates two hundred thirty-five freight Service Centers in the forty-eight contiguous states. (*Id.* at ¶ 5.) Each Service Center is managed by a Service Center Manager who is supported by various Supervisors and, in some cases, one or more Assistant Managers. (*Id.* at ¶ 4.) Old Dominion employs various combinations of employees at each of its Service Centers depending on the size, operations, and business needs of each location. (*Id.*)

The Service Center where Plaintiff and the other three putative opt-ins worked is located in Conley, Georgia but is commonly referred to as the ATL Service Center. (Ex. B, Declaration of Kevin Flenniken ("Flenniken Decl.") at ¶¶ 2-3.) The ATL Service Center operates twenty-four hours per day, and it is Old Dominion's seventh largest service center in the country based on the number of available dock doors. (Flenniken Decl. at ¶ 4; Bates Decl. at ¶ 6.) ATL functions as a "break-bulk" facility (*i.e.*, a facility that receives large shipments of cargo, which are divided for delivery to multiple destinations). Products transported by Old Dominion arrive at the ATL Service Center where Dockworkers unload incoming freight, break bulk freight, and load outgoing freight. (Flenniken Decl. at ¶ 5; Bates Decl. at ¶ 7.)

Within Georgia, Old Dominion maintains eleven Service Centers, each different from the others. (Bates Decl. at ¶ 5.) Across the country, it maintains two hundred twenty-four additional Service Centers. (*Id.*) The operations among the Service Centers are diverse, serving different customers, processing different types of shipments, and employing different types and numbers of employees. (*Id.*) Even within Atlanta, the Company maintains two Service Centers—ATL and Atlanta West (ATW)—that are distinguishable with respect to the types of customers served, the structures and layouts of the physical locations, and the workforces. (*Id.* at ¶ 8; Ex. C, Declaration of Raymond Blake ("Blake Decl.") at ¶ 4.) Unlike ATL, ATW is

a midsize Service Center with less need for the switching work that Plaintiff contests. ATW employs few Switchers and relies more heavily on Dockworkers to complete the switching (or "hostling") work that Plaintiff challenges. (*Id.*) Similar variations are evident between other Service Centers within Georgia and, not surprisingly, abound outside the state. (Bates Decl. ¶ 9.) For example, while ATL processes thousands of shipments per shift, and employs a number of employees titled as Switchers, the Macon, Georgia Service Center is much smaller and processes significantly fewer shipments; it does not employ anyone titled "Switcher," and the switching work is completed by other members of the workforce. (Bates Decl. at ¶ 9; Flenniken Decl. at ¶ 6; Ex. D, Declaration of Jason Moss ("Moss Decl.") at ¶ 6.)

### 2. Switchers, Yard Hostlers, Yard Dogs, and Other Employees who Work at Old Dominion's Service Centers

Old Dominion employed Plaintiff Eduardo Saenz from December 2000 until September 2018, and Plaintiff worked under the job title of Switcher between 2014 and 2018. (Bates Decl. at ¶ 10.)[2] During the period relevant to their claims, Plaintiff and the putative opt-ins worked at the ATL Service Center. (Bates Decl. at ¶ 10; Flenniken Decl. at ¶ 3.) Like all Switchers, Plaintiff periodically performed work on

---

[2] While Plaintiff and one putative opt-in worked under the title of Switcher during the relevant period, the other two putative opt-ins worked only under the title of Dockworker. (Flenniken Decl. ¶ 3.)

the dock where he loaded and unloaded freight for transport in interstate commerce. (Bates Decl. at ¶ 10; Flenniken Decl. at ¶ 8; Blake Decl. at ¶ 5; Moss Decl. at ¶ 4.)

It is not clear from Plaintiff's Motion whom he would like to include in the class he wants to represent. On one hand, he defines a class based on the duties that employees perform. On the other, he defines a class based on the inclusion of several job titles. Old Dominion has numerous types of employees who, at any given time in any given week, might perform the duties that Plaintiff defines as triggering inclusion in his purported class. (Flenniken Decl. at ¶ 7; Bates Decl. at ¶ 11.) Old Dominion also employs individuals in jobs with at least one of the titles included in Plaintiff's proposed class definition, although more than one of the titles he listed might be used colloquially to denote: (a) the job title; (b) intermittent duties done by an employee, even if he were not given the same title; or (c) the vehicle driven by an employee while doing some of those duties. (Bates Decl. at ¶ 12.)

In the interest of providing this Court more useful information than what Plaintiff has provided, below is a general description of how Plaintiff was involved in Old Dominion's operation as a motor carrier:

- Goods arrive at the ATL Service Center from various points of origin located across the country or around the globe. Goods arrive in a trailer pulled by a truck on public highways. A Line Haul (i.e., over-the-road) Driver deposits the trailer at a location within the "yard," which refers to a gated, paved, staging area at the ATL Service Center.

- Plaintiff would sometimes work in the yard performing switching duties, which included: (i) moving a loaded trailer from the yard to a dock door to be unloaded; (ii) moving an empty trailer from the yard to a dock door to be loaded; and (iii) moving a loaded trailer from a dock door to the yard to be picked up by a Line Haul Driver for transport and delivery to other Old Dominion Service Centers around the country.

- Plaintiff would sometimes work on the loading dock performing Dockworker duties, which included loading and/or unloading freight onto and off of trailers in a manner that ensured that the trailers could be safely transported on public highways without violating mandated axle weight and bridge weight formulas, maximum gross vehicle weight limitations, or otherwise cause a safety risk to Old Dominion's driver or the motoring public.

(Flenniken Decl. at ¶ 8.)

Not all of Old Dominion's Service Centers have employees in the job title of Switcher. (Bates Decl. at ¶ 13; Moss Decl. at ¶ 6.) Yet each Service Center must accomplish the switching work necessary for the Service Center to operate. (*Id.*) As a result, numerous Service Centers rely on Dockworkers, Supervisors, and various types of drivers to perform switching duties when needed. (*Id.*) The frequency and duration of the need for switching work varies. (Bates Decl. at ¶ 13.)

Employees titled "Switcher" do not perform only switching duties in the yard. (Bates Decl. at ¶ 14.) Switching is a function of the dock operations, and, in nearly all cases, employees are hired as Dockworkers who work solely on the dock, and the employees progress from there to performing switching duties after they have gained sufficient experience. (*Id.*) If a Dockworker begins performing switching duties, and

is assigned the job title of Switcher, that employee must still perform duties on the dock. (*Id.*) The nature and extent of each employee's duties (including the time, if any, that they spend on switching duties) are dependent day-to-day on the Supervisors managing the Service Center's work, the employees' own preferences, and the business needs at the Service Center. (Flenniken Decl. at ¶ 9; Bates Decl. at ¶ 15.) For example, putative opt-in plaintiff Brentson Andrews rarely performed switching duties. (Flenniken Decl. at ¶¶ 3, 9; Moss Decl. at ¶ 5.)[3]

### 3.   **Procedural History**

Plaintiff filed this lawsuit on October 11, 2018. (Dkt. 1.) Three days later, Plaintiff filed his original Motion for Conditional Certification. (Dkt. 4.) With the original Motion, Plaintiff submitted his own self-serving declaration and the declaration of one putative opt-in plaintiff who worked at the same location as Plaintiff. (*Id.*) Two weeks later Plaintiff filed an Amended Complaint and an Amended Motion. (Dkts. 8 and 13.) No additional exhibits or declarations were submitted with the Amended Motion. (*Id.*) Defendant filed a Partial Motion to Dismiss Plaintiff's Complaint and a Motion to Deny Plaintiff's Motion for

---

[3] Company records reflect that Andrews worked under the job title of Dockworker, rarely performed switching duties, and Andrews' former manager recalls that Andrews was nervous about working in the yard, and preferred to work on the dock. (*Id.*)

Conditional Certification as Premature. (Dkts. 10 and 17.) On January 2, 2019, the Court denied Defendant's Motion to Dismiss and ordered Defendant to respond to Plaintiff's Amended Conditional Certification Motion. (Dkt. 36.)

On January 4, 2019, Plaintiff moved this Court to supplement the record in support of his Amended Motion. (Dkt. 37.) Included with Plaintiff's Motion to Supplement is a declaration from Cindy Roden. (*Id.*) Roden is not a member of the proposed class and had no cause to observe the work performed by the proposed class or Plaintiff. (Flenniken Decl. at ¶ 10.) Further, Dockworkers, Switchers, service center human resources employees, and payroll employees do not travel from Service Center to Service Center and, typically, would have no reason interact with employees from other locations. (Bates Decl. at ¶ 17.) Roden is a former ATL Service Center employee. (Flenniken Decl. at ¶ 10.) Although Roden's official title was SVC Supervisor-HR/Payroll, she did not report through human resources; instead, she performed clerical work and reported to the Service Center Office Manager. (*Id.*) Roden resigned unhappily in November 2018. (*Id.*) Recently, Roden sent a scathing letter to Old Dominion's Vice Chairman of the Board, lamenting various circumstances that she described as leading to her departure. (*Id.*, Ex. 1.) In total, Plaintiff has submitted three declarations, one of which is his own, and all of which are from former employees of a single Service Center, to support his request

for a nationwide class. In the three months since Plaintiff filed his lawsuit, only three individuals have filed consents to join the litigation. (Dkts. 3, 16, and 28.)

## ARGUMENT AND CITATION TO LEGAL AUTHORITY

A motion and a few skeletal declarations are no free pass to conditional certification, especially certification of a nationwide class. A plaintiff must do more than provide a *pro forma* argument that the standard for conditional certification is lenient and assert that one or two declarations (or even several) should suffice to initiate a court-involved process of *Herculean* proportions. This is why this Court and others in the District have taken great care in the past decade to grant motions for conditional certification only when the evidentiary support balances appropriately against the size and scope of the class a plaintiff seeks.

It is clear from the precedent that this Circuit takes seriously the fact that it is a plaintiff's burden to establish that he is similarly situated with the group of employees he wishes to represent and that there are others among that group who wish to join the case. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096-97 (11th Cir. 1996); *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). It is also clear from Eleventh Circuit precedent that the question of whether a plaintiff has satisfied his burden must be assessed in relationship to the scope of the class he seeks to represent. The plaintiff must make "*substantial allegations* of *class-*

*wide discrimination*" or, in other words, "detailed allegations supported by affidavits which successfully engaged defendants' affidavits to the contrary." *Grayson*, 79 F.3d at 1097 (emphasis added and internal quotation marks and citation omitted). Shallow suggestions of similarity will not suffice, as a plaintiff's evidence must instead demonstrate a "commonality between the basis for his claims and that of the potential claims of the proposed class, beyond mere facts of job duties and pay provisions." *Beecher*, 904 F. Supp. 2d at 1297 (quoting *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-cv-1681-TWT, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. Jul. 25, 2006)). Limited or unreliable evidence regarding a few employees in a single location will not justify a nationwide class. *See, e.g.*, *id.*

### 1. Plaintiff's Paltry Evidence Cannot Satisfy his Burden of Proof to Justify a Class of Hundreds or Thousands

Despite the great care taken, it is not uncommon for courts in this District to grant motions to conditionally certify collective actions. *See, e.g.*, *Brown v. Venture Express, Inc.*, No. 3:13-cv-20-TCB, Dkt. 41 (N.D. Ga. Nov. 25, 2013) (attached hereto as Ex. E). It is, however, exceedingly rare for a court in this District to conditionally certify a nationwide or otherwise broadly scoped class when a plaintiff fails to submit ample evidence relative to the scope of the class sought. There are numerous examples from this District's pertinent precedent, and indeed from this Court, that demonstrate the balance that must be struck.

In *Brown*, for example, this Court conditionally certified a class comprising intrastate truck drivers and yard workers who worked at a single location that the defendant operated. *See Brown*, Dkt. 41 at pp. 3, 7. There were twenty-two plaintiffs in the case who submitted three detailed declarations about themselves and the employees who worked alongside them at that single location. *Id.* at pp. 3, 6.[4] This Court concluded that the plaintiffs had "carried their burden as to the *similarly-situated prong* by providing several affidavits attesting that the employees had similar jobs, were paid hourly, worked with similar goods, *worked in the same geographic region* and were all subject to a singular, common policy involving a failure to pay overtime compensation." *Id.* at p. 6 (emphasis added).

Similarly, in *Olmstead v. RDJE, Inc.*, The Honorable Judge Thomas Thrash granted conditional certification after examining the sufficiency of the evidence that the plaintiff proffered to satisfy the similarly-situated *and* the "interest of others" prongs. The court found that evidence the plaintiff proffered was sufficient to establish "the putative class . . . consists of employees who all held the same position, who were all paid the same way, and who were all subject to [the defendant's] practice of not paying for shop and travel time." 2017 U.S. Dist. LEXIS 140241, at

---

[4] *See also Brown v. Venture Express, Inc.*, Dkt. 16 at pp. 2-4 (N.D. Ga. Nov. 25, 2013) (Plaintiffs' Mtn. for Conditional Cert., attached hereto as Ex. F).

*5 (N.D. Ga. Aug. 13, 2017). The court drew parallels between the plaintiff's claims and those asserted in a case from Southern District of New York in which the court denied conditional certification.[5] The court in the New York case found that the plaintiffs provided "no concrete facts evidencing a common scheme or plan of wage and hour violations *for employees engaged in different job functions.*" *Id.* By contrast, the plaintiff in *Olmstead* had limited his putative class to only one job, presented testimony that employees in that single job were paid the same way for activities within a limited time period, and testified about his observations and the substance of conversations with others in that job about their duties and the way they were paid. *Id.* at p. 10. The court in *Olmstead* also found that the plaintiff had established a sufficient showing that others might wish to join his small putative class. *Id.* At the time he sought conditional certification, the plaintiff and four other employees had opted into a limited class comprised, at most, of employees who worked only in Alabama and Georgia. The court concluded that, "[g]iven the size of the putative class, … the presence of five plaintiffs sufficiently demonstrates an interest by other employees to opt-in to the suit." *Id.* at 13. The court noted that the "evidence required to show interest … for a class consisting of a mom-and-pop store

---

[5] *See Mata v. Foodbridge LLC*, No. 14 Civ. 8754(ER), 2015 U.S. Dist. LEXIS 70550 (S.D.N.Y. June 1, 2015).

with three locations in a limited geographic area would likely be less than that required for a nationwide class of WalMart employees that has received considerable news coverage." *Id.* at *12.[6]

By contrast, in *Linscheid v. Natus Medical Inc.*, this Court found that a plaintiff failed to demonstrate sufficient interest in his lawsuit to justify conditional certification of a collective comprising "all similarly situated current and former … employees who at any time from May 17, 2009 through [the date of the motion] worked for" the defendant. No. 3:12-CV-67-TCB, Dkt. 23, at p. 2 (N.D. Ga. Nov. 15, 2012) (attached hereto as Ex. G). In support of their motion, the three named plaintiffs submitted their own declarations and that of a single opt-in plaintiff. *Id.* at p. 5. This Court concluded that it did not need to assess whether the several plaintiffs were similarly situated because they had failed to show that there were others among the putative class who were interested in joining their class. From this Court's order, it appears that the putative class could have contained twenty-five current and former employees, such that the plaintiffs and the opt-in who submitted a declaration in support of their motion represented between *four and sixteen percent* of that class.

---

[6] Citing *Riddle v. Suntrust Bank*, No. 1:08-CV-1411-RWS, 2009 U.S. Dist. LEXIS 89955, at *11-14 (N.D. Ga. Sept. 29, 2009) (approving conditional certification where three opt-ins might have constituted twenty-two percent of the putative class, which was also spread out over a wide geographic area).

*Id.* at p. 7. This, the Court found, was insufficient to justify conditional certification; *i.e.*, even though the three plaintiffs and an opt-in plaintiff had initiated the litigation and submitted declarations to support conditional certification of a class comprising only twenty-five putative class members, that was not sufficient to convince this Court to grant conditional certification. *Id.* at p. 9.

*Brown*, *Olmstead*, and *Linscheid* are consistent with other rulings in this District. In cases where evidence of purported similar situation and a showing of others' interest in the suit have been proportionately related to the size and scope of the class sought, conditional certification has been granted.[7] *See, e.g., Bradford v.*

---

[7] In *Mainor v. Lazer Spot*, The Honorable Judge Charles Pannell, Jr., conditionally certified a collective action comprising "yard hostlers" who worked in twenty-five states. At the time the plaintiff moved for conditional certification, there were twelve opt-in plaintiffs and the plaintiff proffered nine detailed declarations, which described *inter alia* conversations with other potentially interested employees, from hostlers who had worked in five locations. *See generally* No. 1:11-CV-971-CAP, Dkt. 24 (N.D. Ga. Aug. 9, 2011) (attached hereto as Ex. H). The court later decertified the collective, in part because the parties agreed that the plaintiff could never prove ultimately that he was similarly situated to those whom he wanted to represent. *See* Dkt. 203 (N.D. Ga. Sept. 24, 2013) (attached hereto as Ex. I). *Compare Jewell v. Aaron's, Inc.*, No. 1:12-CV-0563-AT, 2012 U.S. Dist. LEXIS 92285 at *1-4, 15-17 (N.D. Ga. June 28, 2012) (conditionally certifying nationwide collective action where plaintiff proffered carefully detailed declarations from more than twenty opt-in plaintiffs who worked in twenty-three cities and eleven states covering the Northeast, the Midwest, the Southeast, and the Southwest, each of whom testified to, among many other points, being bound by an automatic meal break deduction policy that deprived them of overtime pay) *with Bennett v. Advanced Cable Contractors, Inc.*, No. 1:12-CV-115-RWS, 2012 U.S. Dist. LEXIS 63605 (N.D. Ga. May 7, 2012) (conditionally certifying Georgia-only collective

*CVS Pharm., Inc.*, No. 1:12-CV-1159-TWT, 2013 U.S. Dist. LEXIS 14403 (N.D. Ga. Feb. 4, 2013) (conditionally certifying a forty-one-state collective comprising employees in a single job where plaintiff proffered five detailed declarations from opt-in plaintiffs who worked in four of defendant's nine regions across the country; and opt-in plaintiffs from five of those regions had filed consents to opt in).[8] Where the showing has not been proportionately related, conditional certification has been denied. *See, e.g., Beecher*, 904 F. Supp. 2d at 1299-1300 (Evans, J.) (denying conditional certification of nationwide, four hundred store collective where plaintiffs proffered nineteen declarations of opt-in plaintiffs, of which there were twenty-one,

---

comprising employees in a single role on the basis of fifteen named and opt-in plaintiffs).

[8] It is worth noting that *Stevenson v. Great Am. Dream, Inc.*, on which Plaintiff relies to argue that his limited showing is sufficient to justify conditional certification of a nationwide collective action, the court conditionally certified a class comprised of entertainers who worked at *only one* small nightclub in Decatur, Georgia. *See* No. 1:12-CV-3359-TWT, 2013 U.S. Dist. LEXIS 114419, *1-2 (N.D. Ga. Aug. 14, 2013). Even the two cases he cites from the Southern District of Florida should convince this Court to deny Plaintiff's Motion rather than grant it. *See Rojas v. Garda CL Southeast, Inc.*, 297 F.R.D. 669, 676-77 (S.D. Fla. 2013) (on the basis of *fourteen declarations*, conditionally certifying a collective *limited* to those who "worked at only the [defendant's] Tampa, Orlando, West Palm Beach, and Miami branches"); *Guerra v. Big Johnson Concrete Plumbing, Inc.*, 2006 U.S. Dist. LEXIS 58484, * 8-12 (S.D. Fla. May 17, 2006) (conditionally certifying *Florida-only* collective where plaintiff alleged a clear pay policy that affected all employees putatively in the limited class).

who worked in Georgia, Illinois, and Texas, but "almost exclusively within a single market in Atlanta, Georgia, at four stores within a thirty-two-mile radius").

This Court's consideration of these cases should lead to the reasonable conclusion that Plaintiff's showing is insufficient to justify the nationwide collective that he seeks. He submitted two declarations with his Motion, his own and that of one opt-in plaintiff. Neither contains the sort of details that have justified this Court's—or any other's—conditional certification of any class, much less one so expansive as the one Plaintiff desires. Since he filed this lawsuit more than four months before this filing, only three employees have consented to opt into his case. Of the more than two hundred locations that Plaintiff claims should be swept into his class, he and the three opt-in plaintiffs worked at only one location.

Plaintiff did not help himself when, nearly four months after filing his *original* motion, (Dkt. 4), he supplemented his Amended Motion by filing the declaration of Cindy Roden, a disgruntled former Old Dominion employee who is not a putative member of the class. (Dkt. 37.) Roden worked as an office clerk, and she worked solely at the ATL service center. (Dkt. 37-1, ¶¶ 4, 5.) She testified that decisions about who was "eligible for overtime and which employees were not eligible for overtime" were made not in Conley, where she worked, but in Thomasville, North

17

Carolina.[9] *Id.* She testified that a corporate policy of paying employees overtime premiums when they worked beyond 60 hours in a week applied to Switchers, Drivers, and Dockworkers. *Id.* She testified that she did not know the reason for the policy. *Id.* She testified about duties that certain "department heads" and Switchers performed, presumably at the Service Center where she worked. *Id.*

Roden *did not* testify that she knew what any Switcher, Driver, or Dockworker did outside of Conley, Georgia.[10] She *did not* testify that she had heard from *any* Old Dominion employee that they believed the Company had underpaid them or that any wished to file or join a lawsuit. She *did not* testify that she believed Old Dominion or any of its policies or practices violated the law. It is remarkable that, in the four months since he filed his case, Roden's declaration is the *only* additional piece of purported evidence that Plaintiff could muster in "support" of his alleged nationwide collective action. Her declaration abjectly fails to advance his argument.

---

[9] Roden does not aver a basis in personal knowledge for her testimony about what might have occurred at any location where she did not work.

[10] In a scathing letter she sent recently to Old Dominion complaining about perceived wrongs done to her before her separation, she wrote about two employees who were classified as "dock workers" but were doing "switcher" duties. Confirming her inability to testify credibly about employees' duties performed at Old Dominion's ATL service center, much less across its service centers nationally, Roden lamented, "I have no idea if these two dock workers actually was switching or if they was just transferring times! I wasn't made aware of who they had doing what. . . we had over 800 employees and I did payroll not operations." (Flenniken Decl., Ex. 1.)

Similarly, Plaintiff's references to several cases filed against Old Dominion in other states neither establish the existence of similarly situated employees nor prove that there are other Old Dominion employees interested in joining Plaintiff's lawsuit. Plaintiff argues that these several suits were filed by "switchers" for the company's alleged "failure to pay them overtime." (Dkt. 13, p. 9.) Plaintiff does not explain—and could not know—what the circumstances of those lawsuits were. Even if this Court were to review the dockets in those cases, it would glean little of use to support speculation that the "switcher" involved in each case was similarly situated to Plaintiff. Further, if this Court *were* to attribute some relevant meaning to the fact that Old Dominion has been sued previously by employees performing switcher duties, a reasonable attribution would be that these several lawsuits demonstrate that others *do not* wish to join Plaintiff's lawsuit.

### 2.    The Diverse, Nationwide Class That Plaintiff Desires Would Give Rise to Numerous and Varied Mini-Trials

The impropriety of conditional certification in this case is further underscored by the evidence that Old Dominion has proffered. That evidence makes clear that the duties Plaintiff claims should bind his purported class together—the "switching" duties—were performed during the time period he places at issue by employees in various job titles and were performed with varying frequency depending on numerous factors specific to individual Service Centers and individual employees.

(Bates Decl. at ¶ 15.) Plaintiff defines his catch-all class broadly and, so defined, it could include Dockworkers, Supervisors, Switchers, and even Drivers.

At least as problematic is the fact that Plaintiff avoids in his Motion even a vague reference to the primary defense generally applicable in cases involving drivers, helpers, and loaders (*i.e.*, roles like Plaintiff places at issue in this case) whose work affects the safe transportation of goods on public highways, the FLSA's Motor Carrier Act Exemption ("MCE"), 29 U.S.C. § 213(b)(1). The MCE exempts from the FLSA's overtime pay requirements not only drivers but also those employees who load and unload goods onto and from trailers to ensure that the trailers may be safely driven on public roads during the continuity of interstate transportation. 29 C.F.R. § 782.3(b). Plaintiff tactically avoids this legal issue.

This is not a merits argument. It is, instead, an observation illuminating the fact that Plaintiff's proposed class cannot be managed economically and in a way that fulfills the purpose of collective action litigation under the FLSA. That is, even if this Court were to conditionally certify a class comprising employees solely in Plaintiff's specific job title, it would be necessary to assess the MCE's applicability by each distinct opt-in plaintiff's individual work performed each day, week, month, and quarter. Old Dominion's Service Center Managers and their department leads make decisions on a daily basis about who will perform switching responsibilities

and who will, in addition to those responsibilities, also work on the loading docks to load and unload trailers for safe operation on public roads.[11]

Plaintiff does not request a class comprising employees *only in his specific job title*, a still overbroad class requiring individualized assessments. He defines his class broadly to contain employees who "were primarily engaged in moving trailers to designated loading and unloading sites on Old Dominion's premises, including (but not be limited to) those individuals who were given job the job titles of 'switcher,' 'yard switcher,' 'hostler,' or 'yard jockey.'" On any given day, this definition could include employees in a variety of positions. At one Service Center, Dockworkers who never hold any of the titles that Plaintiff enunciates might be devoted—primarily at times—to switching responsibilities. At another, employees in various supervisory roles might do so. Even at the Service Center where Plaintiff worked, this is could be the case, as Plaintiff's declarant Cindy Roden made clear in her letter to Old Dominion's CEO wherein she outlined concerns that Dockworkers were working as Switchers but at an incorrect pay rate.

---

[11] It is at a Service Center level that the decisions will be made whether those responsibilities will include driving those vehicles on public roads, as many Switchers and Dockworkers possess commercial driver's licenses. (Bates Decl. at ¶ 16.)

This Court needs not accept Plaintiff's invitation to conditionally certify a collective action that would require numerous mini-trials to determine whether the responsibilities performed by individuals among this diverse group of employees performing switching and other duties justify an exemption from the FLSA's overtime requirements. *See Beecher*, 904 F. Supp. 2d at 28-29. Indeed, the evidence adduced during discovery would undoubtedly justify numerous summary judgment motions on individual opt-in plaintiffs' claims. There could be no collective determination; it would be akin to judgment by paper-cut in a manner wholly inconsistent with the purposes of FLSA collective action litigation.

Further, there is a serious question concerning this Court's authority to exercise personal jurisdiction over putative collective action members who reside outside of Georgia. The U.S. Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017), suggests the answer is that it cannot. *See also Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-cv-30116-KAR, Dkt. 64 (Dist. Mass. Nov. 27, 2018) (finding plaintiffs did not sustain their burden to refute defendant's claim that the court could not exercise personal jurisdiction over putative collective members outside of Massachusetts where defendant's principal place of business was outside the state and alleged instances of unlawful pay affecting those outside the state had no contact with the forum)

(attached hereto as Ex. J). Old Dominion's principal place of business is in North Carolina. (Bates Decl. at ¶ 3.) Most of the individuals whom Plaintiff wishes to represent have no contact with this forum, and neither do the alleged wrongs that Plaintiff wishes to claim on their behalf. Taking all of this into account, it is clear that Plaintiff's Motion must fail.

### 3. It Would be Improper for Plaintiff to Submit Additional Declarations With his Reply in Hopes of Saving his Motion

When he has analyzed Old Dominion's arguments and evidence submitted in opposition to his Motion, Plaintiff may submit new declarations and craft new arguments in an attempt to circumvent the reasons why his Motion must be denied. Any such attempt would be improper. It has been more than four months since Plaintiff filed his original complaint. It has been nearly as long since he moved for conditional certification. In that time, he has supplemented his Motion once already, by filing Cindy Roden's valueless declaration. Having squandered any opportunity he might have had to put forth a stronger showing in support of the relief he sought, this Court should reject anything more that he files beyond arguments in further support of those he has already made. *See, e.g., McCray v. Cellco P'ship*, No. 1:10-CV-2821-SCJ, 2011 U.S. Dist. LEXIS 82420, *7-9 (N.D. Ga. Apr. 8, 2011) (refusing to consider declarations and arguments raised for the first time in a reply brief supporting motion for conditional certification).

**4.    Old Dominion Objects to the Notice, its Contents, and the Notice Distribution Process That Plaintiff Proposes**

With his Motion, Plaintiff proposes a draft notice that he would like to send to the expansive class he wishes to represent. He proposes that this Court should require that Old Dominion produce to him, for each putative member of that expansive, unjustified class: a last home phone number, a last cell phone number, last known email address(es). He proposes that he would use this information, in addition to each putative class member's last known address, to mail, email, call, and otherwise hound them to solicit their involvement in his case.

There are many reasons why what Plaintiff proposes is objectionable. Old Dominion objects to the substance of the notice, *inter alia*, for its vagueness and for the confusion it would cause as drafted. It objects to the means by which Plaintiff would distribute the notice, namely by email(s) rather than simply by the preferred method of U.S. Mail. It objects to Plaintiff harassing potential class members, without restriction, by email(s), calls to their home, calls to their cell phones, and perhaps other means. To resolve these objections, among its others, Old Dominion requests that, in the event this Court conditionally certifies an FLSA collective of any scope, the parties be given twenty-one days to confer about and present, if possible, a jointly proposed notice and notice distribution process, after which

appropriately limited contact information for the class that this Court defines would be due for exchange within twenty-one days.[12]

## CONCLUSION

For the reasons set forth herein, and especially in light of the broad sweeping national class that Plaintiff proposes, Defendant respectfully requests that this Court deny Plaintiff's Motion. Should this Court nevertheless grant the Motion, the Court should direct the Parties to work together and draft a proposed notice and consent form.

## CERTIFICATE OF FONT SIZE

Pursuant to Local Rule 7.1(D), Defendant's counsel certifies that this motion has been prepared in Time New Roman 14-point font, one of the fonts approved in Local Rule 5.1(B). Respectfully submitted,

OLD DOMINION FREIGHT LINE, INC.

By: /s/ *Brett C. Bartlett*
     Brett C. Bartlett
     Georgia Bar No. 040510

---

[12] Courts in this circuit routinely direct parties to meet and confer and jointly submit a proposed notice prior to ruling on court approval, especially when a party has objected to the notice proposed. *See Stitt v. Am. Disposal Servs. Of Georgia,* No. 1:18-CV-2516-TWT2018 U.S. Dist. LEXIS 215514, at *12 (N.D. Ga. Dec. 20, 2018*); Olmstead v. RDJE, Inc.,* No. 16-CV-198-TWT, 2017 U.S. Dist. LEXIS 140241, at *13 (N.D. Ga. Aug. 13, 2017); *Geddis v. S. Home Care Servs*., No. 3:07-CV-036-JTC, 2009 U.S. Dist. LEXIS 135881, at *10 (N.D. Ga. Oct. 28, 2009).

bbartlett@seyfarth.com
Katherine M. Smallwood
Georgia Bar No.
ksmallwood@seyfarth.com
Ariel D. Fenster
Georgia Bar No. 420858
afenster@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia  30309-3958
Telephone: (404) 885-1500
Facsimile:  (404) 892-7056

Counsel for Defendant

Date:  January 28, 2019

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| EDUARDO A. SAENZ, on behalf of himself<br>And all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:18-cv-04718-TCB |
| OLD DOMINION FREIGHT LINE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I certify that on January 28, 2019, I filed **DEFENDANT OLD DOMINION FREIGHT LINE, INC.'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CONDITIONAL CERTIFICATION** with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorneys of record:

Louise N. Smith
William Julian Smith, III
Smith Law, LLC
3611 Braselton Highway, Suite 202
Dacula, Georgia 30019

*/s/Brett C. Bartlett*
Counsel for Defendant