# EXHIBIT A

## **CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT**

This Confidential Settlement and Release Agreement ("Agreement"), is entered into by and between Old Dominion Freight Line, Inc. ("ODFL"), on the one hand, and Eduardo Saenz (the "Named Plaintiff" and the Opt-in Plaintiffs, on the other hand, (collectively, the "Parties").

### **RECITALS**

WHEREAS, the Named Plaintiff filed a Complaint on October 11, 2018 in the United States District Court for the Northern District of Georgia, which was assigned Case No. 1:18-cv-04718-JPB (the "Litigation") and which the following Opt-in Plaintiffs later joined:

Abram, Jarred
Ahalt, Richard
Andrews, Bretson K.
Arman, Edwin
Ashlock, Michael
Baker, Eric
Baklashev, Mark
Beattie, John
Billings, Tarrio
Blackington, Mathew
Blackshear, Kenneth
Blottie, Jacob
Bower, Steven
Bozett, Casey
Braily Gonzalez
Brightbill, William
Brown, Christopher
Brown, Gavin
Brown, Pierce
Cain, Jeffery
Caison, Melvyn
Casarez, Larry
Castro, Salvador
Chotas, Brandon
Coker III, William
Collins, Cory
Coon, Ronald
Critchfield, Jesse
Crylen, Joseph
Culver, Rafael
Darneille, Dustin
Darreck Siegfried
David, Anthony
Dotson, Robbie

Dunson, Frederick
Edwards, Jesse
Elder, Andrew
Esquivel, Ricardo Martel
Fernandez, Jose Ortiz
Finai, Pyce
Finai, Tyrone
Ford, Quinn
Frailey, Rickey
Fuqua, Nathan
Gallipeau, Mark
Garcia, Joel
Garten, Michael
Grant, Xavier
Gray, Eddie
Green, Adrian
Grimm, Jr., Donald
Halper, Brian
Harris, Harold
Herrera, Enrique
Hoffman, Cameron
Horn, Jacob
Howerton, William
Hunyady, Charles
Ibrahim, Mostafa
Jackson, Aaron
Jackson, Irvin
Jones, Shawn
Jungwirth, Joseph
Justice, Darrin
Keller, Jason
Kirk, Kevin
Kremple, Kenneth

Krone, Andrew
Krone, David
Laine, Christopher
Leota-Lu (Muavao), Tolutasi
Lilio, Palauni
Liparoto, Brian
Lopez, Abner
Markovich, Sean
Mathieu, Jerry
McCloud, Pecola
McDaniel, O'Brian
McDonald, Jarred
McGee, Douglas
Mills, Christopher
Milone, David
Mitchell, Mario
Mudno, Jr., Robert
Munoz, Jose
Newsome, James
Nichols, Anthony
Oumarou, Antarou
Owens, Ulysses T.
Page, John
Pare, John
Perez, Josue
Perkins, Kyle
Pitcher, Raymond
Pula, Wesley
Randle, Franklin
Reed, David
Richey, Derek
Rimmer, Kelvin
Robinson, Nathan

Robson, Timothy
Rose, James
Russell, Michael
Saenz, Jr., Alvaro
Scott, Dwayne
Sennett, Cody
Shaffer, Tyler
Shank, Jacob
Sheriff, Mustopha
Skelton, James
Smith, John
Summers, Walter
Tabb, Brandon
Taylor, Ryan
Taylor, Todd
Teakell, Chrostopher
Todd, Christopher
Toiaivao, Laman
Tuimalatu, Malaefono
Turman, Larry
Vakapuna, Viliami
Virnich, Austin
Wakefield, Wesley J.
Walker, Josey
Ward, Brad
Wetzel, Jr., Jamie
Williams, Thomas N., Jr.
Winfrey, Darius
Young, Valestine
Zaragoza, Jorge

WHEREAS, in the Litigation, the Named Plaintiff asserts claims that he and other Switchers were misclassified as exempt from the overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), while working for ODFL in the Switcher role.

61775318v.7

WHEREAS, ODFL disputes all of the claims and material allegations made by the Named Plaintiff and the Opt-in Plaintiffs (each a "Plaintiff" and, together, the "Plaintiffs") in the Litigation and maintains, among other things, that Plaintiffs and other Switchers were properly classified as exempt from federal and state overtime requirements; and

WHEREAS, in order to avoid the significant time and expense associated with continued litigation, including, for ODFL, the associated business disruption, the Parties have agreed to settle the Litigation early and amicably pursuant to the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## DEFINITIONS

1. **Agreement.** "The Agreement" means this Confidential Settlement and Release Agreement.

2. **Counsel.** "Counsel" refers to ODFL's Counsel and Plaintiffs' Counsel, collectively.

3. **Gross Amount.** "Gross Amount" means the Seven Hundred and Twenty-Five Thousand Dollars ($725,000) ODFL is paying to settle the Litigation. The Gross Amount is the "all in," maximum amount ODFL may be required to pay in connection with the settlement of the Litigation, excluding the cost of the Third Party Administrator.

4. **Joint Motion for Settlement Approval.** "The Joint Motion for Settlement Approval" refers to the motion that will be filed with the Court to approve this Agreement.

5. **Litigation.** "The Litigation" means the matter tiled *Eduardo Saenz, et al. v. Old Dominion Freight Line, Inc.,* Case No. 1:18-cv-04718-JPB.

6. **Named Plaintiff.** "Named Plaintiff" means Eduardo Saenz.

7. **Notice of Settlement.** "Notice of Settlement" refers to the document that Plaintiffs will receive outlining this Agreement. Each Notice of Settlement will also include the Plaintiffs' individual settlement offers. ODFL and the Named Plaintiff will agree to the contents of the Notice of Settlement before it is distributed.

8. **ODFL.** "ODFL" refers to Old Dominion Freight Line, Inc., the Defendant in the Litigation and one Party to this Agreement.

9. **Opt-in Plaintiffs.** "Opt-in Plaintiffs" refers to the current and former ODFL employees who have joined this lawsuit and are listed above in the recitals.

10. **Plaintiffs.** "The Plaintiffs" means collectively Named Plaintiff and the Opt-in Plaintiffs.

11. **Parties.** "The Parties" means collectively, ODFL, the Named Plaintiff, and all Opt-in Plaintiffs.

12. **Payments.** "The Payments" refers to the individual payments for the Service Award for Named Plaintiff; Alleged Back Wages for all Plaintiffs; Non-Wage Recovery; and Attorneys' Fees and Costs.

13. **Rejecting Plaintiff.** "A Rejecting Plaintiff" refers to any Plaintiff who timely rejects their settlement offer or any Plaintiff who does not cash his or her check within the 90-days.

14. **Released Claims.** "Released Claims" refers to the claims that Plaintiffs are releasing against the Released Parties, as set forth in Section VII of this Agreement.

15. **Released Parties.** "Released Parties" refers to ODFL and its parent, subsidiaries, affiliates, divisions, business units, members, shareholders, and its and their predecessors, successors, officers, directors, agents, employees, and assigns.

16. **Response Period.** "Response Period" refers to the period of time that Plaintiffs will have thirty (30) days to accept or reject their individual settlement offer

17. **Qualified Settlement Fund.** "Qualified Settlement Fund" refers to the account established by the Third-Party Administrator ("TPA") into which the Gross Settlement Funds shall be deposited.

18. **Settling Plaintiff.** A "Settling Plaintiff" refers to any Named or Opt-in Plaintiff identified above within the scope of the settlement who does not timely reject his/her individual settlement offer.

19. **Third Party Administrator or TPA.** "Third Party Administrator" or "TPA" shall be Attic Administration, LLC.

## TERMS AND CONDITIONS

I. <u>**No Admission of Liability.**</u> The Plaintiffs acknowledge and agree that this Agreement reflects a compromise and will not be construed as an admission of liability by ODFL or any of the other Released Parties at any time, for any purpose, or under any circumstance. ODFL expressly denies liability in this matter. Neither this Agreement nor any negotiations in connection herewith will be offered as or deemed to constitute evidence with respect to any past, present, or future issue or dispute, except for purposes of enforcing this Agreement.

II. <u>**Communicating Settlement Offers, Acceptance, and Rejection.**</u>

    A. **Distribution of Notice of Settlement.** Each Plaintiff will receive a Notice of Settlement outlining this Agreement. Each Notice of Settlement will include each Plaintiff's individual settlement offer. ODFL and the Named Plaintiff will agree to the contents of the Notice of Settlement before it is distributed. A Third-Party Administrator ("<u>TPA</u>") shall be responsible for distributing the Notice of Settlement to the Plaintiffs. The TPA will send the Notice of Settlement to all Plaintiffs within fourteen (14) days of execution of this Agreement. Along with the Notice of Settlement, the TPA will also send W-4 forms to former employees, and W-9 forms to each Plaintiff.

    B. **Acceptance and Rejection.** All Plaintiffs will have thirty (30) days to accept or reject their individual settlement offer (the "<u>Response Period</u>") by providing a written rejection to Plaintiffs' Counsel or doing nothing to accept. All Plaintiffs who reject their settlement offer will forever forfeit their consent-based tolling if they do not re-file their claim within 15-days after their claims are dismissed

without prejudice. Furthermore, any Plaintiff who does not cash his or her check within the 90-days will be deemed to have rejected the Agreement. Any Plaintiff who rejects his or her settlement offer or who does not cash his or her check within the 90-days will be deemed a "Rejecting Plaintiff." A Rejecting Plaintiff is not bound by the Release of Claims identified in paragraph VII.

### III.  Dismissal of Litigation With Prejudice.

A. Within fourteen (14) days of the Response Period deadline, the Parties shall file a Joint Motion for Settlement Approval. Plaintiffs' Counsel will draft the Joint Motion for Settlement Approval, consistent with the terms agreed upon. Plaintiffs' Counsel will provide ODFL's Counsel with a draft of the Joint Motion for Settlement Approval with at least seven (7) days to review and discuss any changes. Counsel shall work on the Parties' behalf, and in good faith, to resolve any disputes and the contents and procedures for filing such motions.

B. If the Court does not dismiss the Litigation with prejudice pursuant to the efforts described in this Section III, the Parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections. If an objection cannot be resolved in a manner sufficient to allow the Court to grant approval, then this Agreement will be deemed void.

### IV.  Consideration to be Paid By ODFL.

A. **Gross Amount.** In consideration for the dismissal with prejudice of the Litigation, as well as the release of claims effected by this Agreement, ODFL will pay a maximum of Seven Hundred and Twenty-Five Thousand Dollars ($725,000.00) (the "Gross Amount") to settle the Litigation. The Gross Amount is the "all in," maximum amount ODFL may be required to pay in connection with the settlement of the Litigation, *except* for the full cost of the TPA and ODFL's share of payroll taxes due as a result of payments to Plaintiffs allocated as W-2 wages pursuant to this Agreement.

B. **Allocation of Gross Amount.** The Gross Amount shall be allocated as follows:

1. *Service Award For Named Plaintiff.* ODFL will pay the Named Plaintiff One Thousand Five Hundred Dollars ($1,500.00) as a service award fee for initiating and pursuing the Litigation, actively participating in discovery in the Litigation, and furthering the interests of the other Plaintiffs, including by pursuing and negotiating the resolution of the Litigation. ODFL will issue a check and an IRS Form 1099 to the Named Plaintiff in connection with this payment.

2. *Alleged Back Wages (Including Overtime Pay).* ODFL will pay Plaintiffs, including the Named Plaintiff, a total gross sum of Two Hundred and Thirty-Eight Thousand Four Hundred Sixteen Dollars and Sixty-Seven Cents ($238,416.67), less applicable withholdings and deductions, in consideration for back wages (including overtime compensation) allegedly due under the FLSA and any state wage and hour laws. Within Seven (7) days of the execution of the Agreement, Plaintiffs' Counsel shall calculate the gross amounts to be distributed among Plaintiffs' Counsel, Named Plaintiff, and Opt-in Plaintiffs pursuant to the Agreement and shall provide the same to the TPA and ODFL's Counsel. ODFL will issue IRS Forms W-2 to Plaintiffs to reflect these payments.

3. *Non-Wage Recovery (Including Liquidated Damages).* ODFL will pay Plaintiffs, including the Named Plaintiff, a total sum of Two Hundred and Thirty-Eight Thousand Four Hundred Sixteen Dollars and Sixty-Six Cents ($238,416.66) in consideration for liquidated damages and other non-wage recovery. ODFL will allocate this total sum and issue checks to Plaintiffs in the amounts specified

by Plaintiffs' Counsel. ODFL will issue IRS Forms 1099 to Plaintiffs to reflect these payments.

          4.     **_Payments to Rejecting Plaintiffs._** The Parties agree that any Payments issued to Rejecting Plaintiffs will return to ODFL. The TPA will be responsible for calculating this amount and ensuring that ODFL receives such funds.

          5.     **_Attorneys' Fees and Costs._** ODFL will pay by wire transfer to Plaintiffs' Counsel, Nichols Kaster PLLP, a total sum of Two Hundred Forty-One Thousand Six Hundred and Sixty-Six Dollars and Sixty-Seven Cents ($241,666.67) for attorneys' fees and Five Thousand Dollars ($5,000.00) for litigation expenses. ODFL will issue each Settling Plaintiff a Form 1099 for his or her portion of total attorneys' fees based on his/ her pro-rata share of the gross amounts paid pursuant to Sections IV.B.1 through IV.B.4, above.

## V.   Timing of Payments.

    A.     ODFL will distribute the Gross Amount into a Qualified Settlement Fund set up by the TPA. The TPA shall distribute the Payments twenty (20) days after the date that: (i) the Court has dismissed the Litigation, with prejudice as set forth in II.A above; and (ii) the TPA has provided ODFL's Counsel with an IRS W-9 for each Settling Plaintiff and a W-4 for each Settling Plaintiff who is a former employee.

    B.     In accordance with Section II.B, above, ODFL will not be required to send settlement checks to any Plaintiff who in writing rejects his or her settlement offer.

    C.     Checks to Settling Plaintiffs shall indicate on their face that they will be void after ninety (90) days. In accordance with Section II.B, Settling Plaintiffs shall have ninety (90) days to cash or deposit their checks. Settlement checks that have not been cashed or deposited within 90 days shall be null and void. ODFL will retain any funds from such settlement checks in accordance with Section IV.B.5. The TPA shall provide Plaintiffs' Counsel with a list of individuals who have not cashed their checks 30 days before the 90-day void date.

## VI.   Tax Advice, Consequences, and Indemnification.

    A.     Each Settling Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Agreement. Nothing in this Agreement shall be construed as ODFL, ODFL's Counsel, or Plaintiffs' Counsel providing any advice regarding the payment of taxes or the tax consequences of a Plaintiff's participation in any portion of this Agreement.

**Settling Plaintiffs are strongly urged to seek advice from a tax professional to ensure they do not pay any unnecessary taxes and may refer them to this Agreement, as well as 26 U.S.C. §§ 62(a)(20) and 62(e).**

## VII.   Release of Claims.

    A.     **Settling Plaintiffs' Release of Wage and Hour Claims.** In exchange for the monetary consideration recited in this Agreement, the Settling Plaintiffs agree to dismiss the Litigation (and their respective claims) with prejudice; which will fully, finally, and forever release ODFL and its parent, subsidiaries, affiliates, divisions, business units, members, shareholders, and its and their predecessors,

successors, officers, directors, agents, employees, and assigns (collectively, the "Released Parties") from all claims under the FLSA and any other applicable federal, state, or local statute or common law theory for unpaid wages of any kind (e.g., base salary, regular wages, overtime pay, premium pay, commissions, bonuses, mileage reimbursement, uniform deductions, tips, etc.), as well as all related claims for any other compensation, benefits, penalties, interest, liquidated damages, damage enhancements, attorneys' fees, costs, or expenses, that are or could have been asserted in the Litigation, relating back to the full extent of the applicable statutes of limitations under the FLSA and under any other applicable federal, state, or local statute or common law theory giving rise to any such claim, through January 29, 2020, with prejudice (collectively, the "Released Claims").

B. **Release Exclusions.** The Release of Claims in this Section VII excludes the right to enforce this Agreement as well as any claims that cannot be waived by law. This includes any claim for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; and any existing rights of defense and indemnity or liability insurance coverage. Nothing in this Agreement limits my right to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any law protecting such rights. The Named Plaintiff gives up, however, any money or other personal benefit from ODFL (not a government agency) for any such claim or litigation, whether brought by the Named Plaintiff or on his behalf, unless prohibited by law.

VIII. **Covenant Not to Sue or Participate in Suing.**

A. Settling Plaintiffs will covenant not to sue ODFL or join any suit, and will opt out of any suit, brought against ODFL for any claim or cause of action released pursuant to this Agreement.

B. Nothing in this Agreement prohibits Settling Plaintiffs from suing ODFL, or ODFL from suing the Settling Plaintiffs, to enforce the terms of this Agreement. In the event of a breach of this Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorneys' fees and costs related to the breach-of-contract lawsuit.

C. Settling Plaintiffs acknowledge and agrees that the Covenant Not to Sue in this Section VII is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Settling Plaintiffs further acknowledge and agree that a breach of this Section VII is a material breach of this Agreement, and that the Released Parties will have the right to sue Settling Plaintiffs for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorneys' fees and costs related to the breach-of-contract lawsuit.

IX. **Non-Assistance.** Settling Plaintiffs promise not to voluntarily or knowingly assist, aid, encourage, or cooperate with any other person or entity in threatening, commencing, instituting, maintaining, litigating, or prosecuting any Released Claims (whether those Released Claims are held by me or by such other individuals) against any Released Parties, including, but not limited to, in any class or collective action lawsuit or arbitration proceeding, except as required by court order or by law. This paragraph only applies to litigation, claims, administrative proceedings or other proceedings against a Released Party doing business as "Old Dominion Freight Line, Inc.," "Old Dominion," or "ODFL," or, for an individual, that Settling Plaintiffs know, or should reasonably know, or learn worked for such a Released Party during the time period relevant to the litigation, claim, or other proceeding.

X.   **Agreement Not to Publicize.** The Plaintiffs and Plaintiffs' Counsel will not issue any press release, make any statement, or publish any information to the media, or otherwise publicize in any medium, including but not limited to on any website, application, online forum, or online platform (e.g., Facebook, Instagram, LinkedIn, iMessage, GroupMe, Twitter, Snapchat, etc.), any information regarding any aspect of this Agreement, including, but not limited to, the negotiations and discussions relating to the Agreement.

XI.  **Form and Execution of Agreement.**

   A.   **Representation By Counsel.** Plaintiffs have been represented by counsel throughout all negotiations that preceded the execution of this Agreement. This Agreement has been executed with the consent and advice of counsel. Plaintiffs' Counsel warrant and represent that they were authorized by Plaintiffs, including the Named Plaintiff, to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms.

   B.   **No Reliance on Representations or Other Evidence.** Except as provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms will modify, vary or contradict its terms. In entering into this Agreement, the Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

   C.   **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, except the specific release provision in Section V.A and the covenant not to sue provision in Section VII, the remaining portions of the Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Parties remain materially the same.

   D.   **Counterparts.** This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which will be deemed an original of this Agreement. All counterparts of any such document together will constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart will be enforceable and admissible as an original.

   E.   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous negotiations between them. This Agreement will be construed as a whole according to its fair meaning and intent, and not strictly for or against any party. The Parties, each represented by experienced counsel, participated in the negotiation and drafting of this Agreement. As such, neither the Plaintiffs nor ODFL may claim any ambiguity or vagueness in this Agreement should be construed against the other.

   F.   **Modification.** This Agreement may not be modified or amended, except in writing, signed by each of the Parties.

XII. **Additional Terms and Conditions.**

   A.   **Attorneys' Fees, Costs, and Expenses.** Except as otherwise specifically provided herein, the Parties will bear responsibility for their own attorneys' fees, costs, and expenses, taxable or otherwise, incurred by them or arising out of or related to the Litigation, including the settlement effected through this Agreement, and will not seek reimbursement thereof from any party to this Agreement.

B.     **No Assignment.** Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any Released Claim or any portion thereof or interest therein, including but not limited to, any interest in the Litigation, or any related action, and that any attempt to do so will be void and of no force or effect.

C.     **Controlling Law.** Except as set forth herein, this Agreement will be subject to, governed by, construed, enforced and administered in accordance with the laws of the state of Georgia, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws.

XIII.  **Binding Effect.** This Agreement will inure to the benefit of ODFL, as well as its present and former owners, stockholders, predecessors, successors, joint venturers, assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them.

XIV.   **Notices.** All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement will be in writing and will be delivered personally, by email, or mailed, postage prepaid, by First Class U.S. Mail to the undersigned persons at their respective addresses:

*Counsel for Plaintiffs:*

Louise N. Smith
William J. Smith
SMITH LAW, LLC
3611 Braselton Highway, Suite 202
Dacula, Georgia 30019
Email: louise@smithlaw-llc.com
Email: william@smithlaw-llc.com

Rachhana T. Srey
Caroline Bressman
NICHOLAS KASTER, LLP
80 S. 8th Street
Minneapolis, MN 55402
Email: srey@nka.com
Email: cbressman@nka.com

*Counsel for ODFL:*

Brett C. Bartlett
Ariel D. Fenster
Seyfarth Shaw LLP
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Email: bbartlett@seyfarth.com
Email: afenster@seyfarth.com

---

***BY MY SIGNATURE BELOW, I REPRESENT THAT: I HAVE READ THIS AGREEMENT; I HAVE BEEN GIVEN SUFFICIENT TIME TO CONSIDER THE AGREEMENT; AND I UNDERSTAND AND VOLUNTARILY ENTER INTO THE AGREEMENT.***

---

2

61775318v.7

NAMED PLAINTIFF EDUARDO SAENZ:

_Eduardo J Saenz_  3/4/2020
Signature

FOR NICHOLS KASTER, PLLP
_Rachhana T. Grey_
Signature
Name: Rachhana T. Grey
Title: Attorney
Date: 3/5/2020

FOR OLD DOMINION FREIGHT LINE, INC.:

_[signature]_
Signature

Name: ROSS H. PARR

Title: SVP-LEGAL AFFAIRS, GENERAL COUNSEL & SECRETARY

Date: 3/10/2020

2

61775318v7